UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CARLOS GARCIA, A38505829

    Petitioner,

    -v-                                      04-CV-0949(MAT)
                                              **ORDER**

U.S. DEPARTMENT OF HOMELAND SECURITY,

    Respondent.

---

**INTRODUCTION**

Petitioner Carlos Garcia ("Garcia or "petitioner"), proceeding *pro se*, commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2241. Petitioner challenges a final order of removal based on a claim that he obtained derivative citizenship through the naturalization of his father, and accordingly seeks (1) release on bond and (2) change of custody. The Court notes that petitioner's claim for citizenship is properly raised in a petition for habeas corpus, "which is not converted to a petition for review even after the passage of the REAL ID Act." Lewis v. McElroy, 2008 WL 4420681 at **2 (2d Cir. 2008) (citing Ng Fung Ho v. White, 259 U.S. 276, 284 (1922)); see also 8 U.S.C. § 1252(e)(2)(A).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Petitioner is a native of the Dominican Republic who entered the United States in 1984 as a Lawful Permanent Resident. He was first encountered by the former Immigration and Naturalization

Service ("INS") at Riker's Island on December 9, 1997, where he was serving a sentence for a conviction in New York County Supreme Court for Criminal Possession of a Weapon in the Third Degree.[1] As a result, he was charged as removable from the United States on a Notice to Appear dated January 27, 1998, as having been convicted of a firearm offense pursuant to Immigration and Nationality Act ("INA") § 237(a)(2)(C). See Notice at Respondent's (Resp't) Ex. B (Dkt. #21). Garcia entered INS custody in 1998 at the Varick Street Detention Center, and was later transferred to the Oakdale Detention Center in Oakdale, Louisiana. On July 21, 1998, an immigration judge granted petitioner's application for cancellation of removal at Oakdale, Louisiana, and petitioner was subsequently released from INS custody. See Order dated 7/21/1998 at Resp't Ex. B.

Between 2001 and 2002, Garcia was convicted of multiple drug and weapons-related offenses and was again subject to removal from the United States pursuant to INA §§ 237(a)(2)(A)(iii) (aggravated felony statute) and 237(a)(2)(B)(i) (controlled substance violator) according to a Notice to Appear dated March 31, 2003.[2] Notice dated

---

[1] The Homeland Security Act of 2002, 116 Stat. 2135; Pub.L. 107-296, codified at 6 U.S.C. § 101 et seq., abolished the INS effective March 1, 2003, and transferred the INS's functions to the Department of Homeland Security ("DHS") and its components.

[2] Petitioner's criminal convictions included: (1) Criminal Possession of a Weapon in the Fourth Degree (firearm); (2) Criminal Possession of a Controlled Substance in the Fifth Degree; (3) Criminal Possession of a Controlled Substance in the Fifth Degree with Intent to Sell; and (4) a Pennsylvania Disorderly Conduct conviction. See Decl. of Dennis Rau at Ex. A. (Dkt. #21).

3/31/2003 at Ex. B. On September 16, 2003, pending removal proceedings, Garcia filed Form N-600 (Application for Certificate of Citizenship). Upon being interviewed regarding his N-600 Application, Immigration and Customs Enforcement ("ICE") released petitioner from custody on October 6, 2003, in light of the possibility that he may have derived citizenship through his father's naturalization in 1996 when petitioner was seventeen years old.

Subsequent to his release, a document was received by an attorney with the U.S. Department of Homeland Security ("DHS") which indicated that the divorce decree relating to Garcia's parents specified that Garcia's mother, who did not naturalize prior to Garcia's eighteenth birthday, was granted custody of Garcia in the divorce decree. See Decl. of Denise Hochul at Ex. E. Thereafter, complete copies of the divorce decree were obtained. The decree did not award guardianship or custody to Garcia's father, nor did it impose any legal obligations on Garcia's father. Garcia was removed *in absentia* to the Dominican Republic on November 14, 2003. Order dated 11/14/2003 at Ex. B.

On September 14, 2004, petitioner was returned to ICE custody at Batavia, NY. Meanwhile, petitioner's N-600 Application was denied by U.S. Citizenship and Immigration Services ("CIS"). CIS determined that Garcia did not qualify for derivative citizenship because the divorce decree between his parents granted legal

custody of Garcia to his mother, and only his father was naturalized before Garcia's eighteenth birthday. CIS Decision dated 9/29/04 at Ex. B. Garcia appealed his denial to the CIS Administrative Appeals Office ("AAO"). On appeal, petitioner claimed that his parents had a mutual understanding after their divorce that his father would have custody of petitioner. In the absence of an amended divorce decree, Garcia's appeal was denied on the basis that he had failed to establish that he was in the legal custody of his father at the time of his father's naturalization. AAO Decision dated 4/26/05 at Ex. B. In November of 2004, an immigration judge issued a Bond Memorandum in which he held that Garcia was ineligible for bond due to his criminal convictions which categorized him as an aggravated felon. Bond Mem. at Ex. B.

Garcia then filed the instant petition for a writ of habeas corpus and motion for stay of removal with this Court. (Dkt. #1). This Court granted petitioner's motion for a stay on December 4, 2004, four days before Garcia was scheduled for removal to the Dominical Republic. (Dkt. #3). Pursuant to the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (2005), the petition was then transferred to the Second Circuit Court of Appeals. (Dkt. #11). On September 28, 2006, the Second Circuit issued an order which noted that Garcia had moved for a stay of removal, appointment of counsel, extension of time, default judgment, change of venue/transfer of custody, and release on bond. The Second Circuit

granted the motion for stay of removal, and transferred the motions for release on bond, transfer, and change of venue back to this Court, and denied petitioner's remaining motions. The Second Circuit directed that further proceedings be held in this Court regarding petitioner's claim that he is a national of the Untied States. (Dkt. #12). See 8 U.S.C. 1252(b)(5)(B). This Court subsequently denied petitioner's motions for discovery and for appointment of counsel. (Dkt. ##34, 36).

While his habeas petition was pending, petitioner filed a second N-600 Application, containing sworn statements from Garcia's father and mother relating to their custody agreement. CIS obtained additional information, including a 1988 tax return from Garcia's father, which indicated that Garcia did not live with his father at the time. Ex. M. A 1992 tax return from Garcia's father stated that his father was single with no dependents. Finally, Garcia's father's naturalization application dated February 27, 1996, indicated that he had eight children, but Garcia was not among the names listed as having resided with their father. Ex. N. Consequently, petitioner's second N-600 was denied. CIS Decision dated 5/16/05 at Ex. B. Again Garcia appealed to the Administrative Appeals Office, which affirmed previous denials issued by CIS. AAO Decision dated 9/19/05 at Ex. B.

On December 28, 2005 and December 28, 2006, decisions to continue detention pending removal following file review were

issued by ICE based on petitioner's recidivist pattern of behavior and his inability to establish residence or employment if released. See ICE Decisions to Continue Detention at Ex. B.

Based on the following reasons, the petition is dismissed.

**DISCUSSION**

**I. Derivative Citizenship**

Petitioner contends that he was conferred derivative citizenship on April 20, 1996, when his biological father was naturalized as a U.S. citizen and petitioner was seventeen years old. See Petition ("Pet.") ¶ 2. (Dkt. #1). The statute providing for this category for acquisition of citizenship is set forth at INA § 321. Prior to its repeal in 2000, § 321 provided, in pertinent part:

> A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:
>
> (1) The naturalization of both parents; or
>
> (2) The naturalization of the surviving parent if one of the parents is deceased; or
>
> (3) The naturalization of the parent *having legal custody of the child* when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
>
> (4) Such naturalization takes place while such child is under the age of eighteen years[.]

6

8 U.S.C. § 1432(a) (emphasis added), repealed by Child Citizenship Act of 2000, Title I, § 103(a), 114 Stat. 1632.[3]

Under § 321(a)(3), legal custody of a child belongs to the parent who has been granted custody of the child by a court order or statuory grant, or where no such order or grant exists, in the parent having actual uncontested custody of the child. Fisher v. Mukasey, 2008 WL 4693135 at *7 (E.D.N.Y. Oct. 22, 2008) (citing Matter of M–, 3 I&N Dec. 850, 856 (BIA 1950). Section 321(a)(3) "requires formal, legal *acts*, indicating that either both parents wish to raise the child as a U.S. citizen, or that one parent has ceded control over the child such that his objection to the child's naturalization no longer controls." Lewis v. Gonzales, 481 F.3d 125, 131 (2d Cir. 2007)(emphasis in original). One such legal act is the parents' legal separation coupled with custody in the naturalizing parent. Lewis, 481 F.3d at 131.

The legislative history of INA § 321 indicates that "Congress enacted the provision to ensure that only those alien children whose real interests were located in America with their custodial parent, and not abroad, should be automatically naturalized." Bustamante-Barrera v. Gonzales, 447 F.3d 388, 397 (5th Cir. 2006), cert. denied, 547 U.S. 1205 (2006); see also H.R. Rep. No. 82-1365,

---

[3] The Child Citizenship Act ("CCA") repealed Section 321(a) and replaced it with wording that is more easily construed. However, the CCA does not apply retroactively. Drakes v. Ashcroft, 323 F.3d 189, 191 (2d Cir.2003). This Court construes the derivative citizenship statute as it was written when Garcia was covered by it. Nonetheless, the outcome of petitioner's case would not change had the new statute been in effect at the time Garcia's father became a naturalized citizen.

reprinted in 1952 U.S.C.C.A.N. 1653, 1680. In <u>Bustamante-Barrera</u>, the Fifth Circuit construed the section of § 321(a)(3) that stated "the naturalization of the parent having legal custody when there has been a legal separation of the parents . . ." as requiring the naturalizing parent to have *sole* as opposed to joint legal custody. <u>Bustamante-Barrera</u>, 447 F.3d at 396. The <u>Bustamante-Barrera</u> court further reasoned that Congress chose to use the singular form, "parent," to describe the person having custody, which "leaves no room to dispute that, when only one of the two legally separated parents is a naturalized U.S. citizen, that parent is the one who must have legal custody." <u>Id.</u> Thus, a petitioner who was in the sole *physical* custody of his mother, but subject to joint *legal* custody of both parents under the divorce decree, did not derive citizenship at the time of his mother's naturalization under INA § 321. <u>Id.</u> at 398-99.

The dispute in the instant case centers around the requirement of INA § 321 that the naturalized parent must have legal custody of the child seeking derivative citizenship. Petitioner is unable to establish that he was in the legal custody of his father, who was the only parent who was naturalized prior to Garcia's eighteenth birthday. The Dominican divorce decree submitted to the Immigration Court provides that personal guardianship of Garcia was granted to his mother. <u>See</u> Divorce Certificate Extract at Ex. F. That decree does not provide that petitioner's father had joint or sole custody

of the five minor children (including petitioner) listed on the divorce decree. According to the decree, the only judicial determination made with respect to petitioner is that guardianship was granted to his mother, but there is no provision that his father assumed any rights or responsibilities regarding care and custody of the children. It is apparent from the record that Garcia was in the custody of his mother after the divorce.

In an effort to meet his burden of establishing citizenship by a preponderance of the evidence, see 8 C.F.R. 341.2(c), Garcia submitted affidavits executed by his parents as part of his second N-600 application. See CIS Decision dated 5/16/05 at Ex. B. The statements attested to the fact that petitioner was in his father's legal and physical custody from the time of his parents' divorce up to, and including the time of his father's naturalization. N-600 Affidavits at Ex. H. Specifically, petitioner's mother asserted that in 1994, Garcia was left in the care and guardianship of his father, and that his father was legally, financially and physically responsible for Garcia. Id. Petitioner's father also submitted a sworn statement indicating the same. Id.

The Court acknowledges that *legal* custody was not stipulated by the divorce decree. The Second Circuit has determined, however, that residency with a parent is an important aspect of legal custody. See, e.g., Croll v. Croll, 229 F.3d 133, 138-39 (2d Cir. 2000) ("the right to determine the 'place of residence' is an apt

example of a right of custody because it is indicative: the parent who decides where the child dwells is very likely to be the parent who exercises care and control, and therefore has custody"). Garcia's father's application for naturalization indicates that Garcia's residence was not with his father at the time of his father's naturalization. Also, his father's 1992 tax return and his affidavit of support (submitted in connection with a petition for his new spouse's immigrant visa) identified no dependents. CIS Decision dated 5/16/05. Thus, even if this Court were to disregard the provisions of the divorce decree which awarded custody to Garcia's mother, Garcia's claim still fails because he has not demonstrated residency with his father at the time of his father's naturalization in 1996. <u>Fisher v. Mukasey</u>, 2008 WL 4693135 (E.D.N.Y. Oct. 22, 2008) (nationality claim denied where petitioner failed to establish residency or any other evidence demonstrating legal custody with naturalized parent).

Moreover, even if the Court were to consider both of Garcia's parents as having joint custody based on their statements, Garcia's citizenship claim is insufficient under the reasoning of <u>Bustamante-Barrera</u>, because his father had not been granted sole custody, and did not appear to actually have sole custody of Garcia at the time of his naturalization. As a result, this Court finds that petitioner's claim of derivative citizenship is denied for failing to meet the statutory requirements of former INA § 321(a).

## II.  Motion for Release on Bond

In connection with his habeas petition, Garcia has requested to be released on bond. (CA Dkt. #9).  Federal courts have an "'inherent power to enter an order affecting the custody of a habeas petitioner who is properly before it contesting the legality of his custody'". Elkimya v. Dep't of Homeland Sec., 484 F.3d 151, 153 (2d Cir. 2007) (quoting Ostrer v. United States, 584 F.2d 594, 596 n. 1 (2d Cir.1978)). However, in assessing whether release on bond is appropriate, the court must "determine whether the petition raises 'substantial claims' and whether 'extraordinary circumstances exist[ ] that make the grant of bail necessary to make the [petition for review] remedy effective." Elkimya, 484 F.3d at 154 (quoting Mapp v. Reno, 241 F.3d 221, 230 (2d Cir. 2001)). Certain courts in this Circuit have interpreted this standard to include consideration of whether the petitioner has demonstrated a likelihood that he or she will prevail. Renis v. Thomas, 2003 WL 22358799 at *3 (S.D.N.Y. Oct. 16, 2003); see, e.g., Harris v. Allard, 2002 WL 31780176, at *2 (S.D.N.Y.  Dec.11, 2002); Word v. Lord, 2001 WL 1150345, at *1 (S.D.N.Y.  Sept.27, 2001). Although petitioner's argument that derived citizenship was, on its face, substantial, he has failed to demonstrate that he obtained citizenship by derivation through his father's naturalization. See infra Part I.  His petition, therefore, does not raise an extraordinary circumstance that would warrant the grant of bail in

this case. Moreover, the record evidences that Garcia is a non-citizen with an extensive criminal history, which includes two convictions of criminal possession of a controlled substance (cocaine). He is currently being held without bond because he is an "aggravated felon" under 8 U.S.C. § 1101(a)(43)(B) and therefore does not demonstrate that he is likely to prevail on this claim.[4] See Bond Mem. at Ex. B.

**III. Change of Custody**

Petitioner also requests that he be held in custody at a location which is closer to his family. See Pet'r Response (Dkt. #33). This Court has no jurisdiction to review this request pursuant to 8 U.S.C. § 1252(a)(2)(B), which prohibits courts from reviewing discretionary determinations of the Attorney General. See 8 U.S.C. § 1231(g)(1). Transferring an alien from one location to another is therefore within the province of the Attorney General. Avramenkov v. I.N.S., 99 F.Supp.2d 210, 213 (D. Conn. 2000), citing Van Dinh v. Reno, 197 F.3d 427, 433 (10th Cir. 1999); Gandarillas-Zambrana v. BIA, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and

---

[4] Garcia has a second petition for habeas corpus pending before this Court in which he challenges the legality of his continued detention. Exhibits submitted by the respondent include reports by DHS indicating that petitioner was released from custody on January 11, 2008, but violated the terms of his supervision and absconded until he was captured by DHS Fugitive Operations nearly six months later. See Garcia v. Heron, No. 09-CV-0146(MAT), Docket No. 6, Ex. at 11, 25, 27-30, 31-32. (W.D.N.Y. Filed 4/30/2009).

therefore to transfer aliens from one detention center to another."). Garcia has presented no authority to support his claim that this Court has jurisdiction to consider his request that he should be transferred to a facility in New York City. Therefore, petitioner's claim for habeas relief on this ground is also denied.

## CONCLUSION

For the reasons set forth above, Garcia's petition for writ of habeas corpus is dismissed.

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:   September 28, 2009
         Rochester, New York